**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION AT PIKEVILLE**

| | | |
|---|---|---|
| **HEATHER BOSTIC and TIMOTHY BOSTIC, individually and on behalf of the Estate of D.B.,** | ) ) ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 7:15-cv-00084-ART-EBA** |
| | ) | |
| **GLAXOSMITHKLINE LLC, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**GLAXOSMITHKLINE LLC'S MOTION TO SEVER CLAIMS**
**BROUGHT AGAINST THE HEALTHCARE DEFENDANTS**

Plaintiffs, Heather Bostic and Timothy Bostic, individually and on behalf of their deceased minor child Destiny Bostic's estate ("Plaintiffs"), submit the following Response to Defendant GlaxoSmithKline LLC ("GSK")'s Motion to Sever Claims Brought Against The Healthcare Defendants (DE#3).

Defendants harmed Destiny Bostic through two separate prescriptions of Zofran. First, her mother took generic Zofran during the first trimester of pregnancy, which caused Destiny to be born with birth defects in her heart and other body parts. Then, when Destiny was about eight months old, she personally took generic Zofran and died the next day. Each and every defendant played some interconnected role in causing Destiny's injuries and death, and therefore each is a necessary party to fully, fairly and efficiently adjudicate this case. Because two of those defendants are Kentucky citizens that are not diverse from Plaintiffs, this Court does not have jurisdiction and must remand this entire case to Pike County Circuit Court for discovery and trial. *See Smith v. Smithkline Beecham Corp.*, 2010 U.S. Dist. LEXIS 89759 (E.D. Ky. 2010).

## FACTUAL BACKGROUND

GSK developed Zofran "to treat only those patients who were afflicted with the most severe nausea imaginable – that suffered as a result of chemotherapy or radiation treatments in cancer patients."   Complaint at ¶1.   In 2012, GSK pled guilty to criminal charges brought by the Department of Justice for "off-label" promotion of Zofran to pregnant women for morning sickness.   Complaint at ¶7.   GSK also paid $1 billion to settle civil claims for off-label promotion.   Complaint at ¶8.   Defendants Teva Pharmaceuticals USA, Inc., and Taro Pharmaceuticals U.S.A., Inc., ("Teva", "Taro" and/or collectively "the Generics") produce the generic version of Zofran, ondansetron.   Complaint at ¶¶41-46.   Defendant First DataBank, Inc. ("FDB") provides medical safety information directly to consumers through pharmacies.   Complaint at ¶¶48-50.   Defendants Aaronda D. Wells, M.D., and East Kentucky Medical Group, P.S.C., ("Medical Defendants") are Kentucky citizens practicing pediatric medicine in Pikeville, Kentucky.   Complaint at ¶¶32-36.

Heather Bostic was born on January 15, 2014, with severe birth defects to her heart and other parts of her body.   Complaint at ¶11.   Plaintiffs allege that these birth defects were caused by the generic Zofran that Mrs. Bostic ingested during her first trimester.   Complaint at ¶12.   On August 5, 2014, Destiny began vomiting and experiencing other signs of medical distress. Complaint at ¶¶19-20.   Dr. Wells's office did not immediately see Destiny, but when her symptoms worsened, prescribed her Zofran and ordered some tests.   Complaint at ¶¶19-20.   After taking Zofran, Destiny became lethargic.   Complaint at ¶23.   Mrs. Bostic could not reach Dr. Wells and called Destiny's cardiologist, who told her to bring Destiny to the emergency room.   Complaint at ¶¶23-24.   While Mrs. Bostic was putting Destiny in the car, Destiny stopped breathing and died. Complaint at ¶25.

All of the Defendants contributed to Destiny's injuries and death, and it is up to a jury to apportion fault among all of these Defendants. While Mrs. Bostic and Destiny each took generic Zofran, GSK is responsible for both the inadequate warning label and the off-label promotion of Zofran to Mrs. Bostic's and Destiny's respective doctors. The generics are responsible for selling generic Zofran with inadequate and inaccurate labeling and a misbranded drug. FDB is responsible for the consumer medication information Mrs. Bostic received from her pharmacy that failed to warn of the risks of birth defects during first trimester usage. And the Medical Defendants are responsible for the inadequate medical care they provided Destiny, including giving her Zofran despite her age and heart condition. To determine how each party's acts and omissions is causally related to Destiny's injuries and death, all of them are necessary and indispensable to the litigation, and that litigation must proceed in Pike County, Kentucky.

## LEGAL STANDARD

GSK bears "the burden of justifying removal" here. *Smith v. Smithkline Beecham Corp.*, 2010 U.S. Dist. LEXIS 89759 *4 (E.D. Ky. 2010) (*citing Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948-49 (6th Cir. 1994). "Joinder is the rule and severance is the rare exception." *Pinson v. Doe*, 2014 U.S. Dist. LEXIS 22077 *4 (E.D. Ky. Feb. 20, 2014) (*citing United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). "The burden is on the Defendants to show fraudulent joinder, and as with any dispute over removal, all doubts are resolved in favor of remand." *Bowman v. Baggett*, 2014 U.S. Dist. LEXIS 82200 *2 (W.D. Ky. 2014) (*citing Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999). "Fairness, including the possibility of prejudice in the absence of severance, is a critical consideration." *See, e.g., Quesenberry v. Chrysler Group LLC,* 2012 U.S. Dist. LEXIS 107380 *18 (E.D. Ky. 2010) (citations omitted). "In general, the plaintiff is the master of the complaint and has the option of naming only those parties

the plaintiff chooses to sue, subject only to the rules of joinder of necessary parties." *Melton v. Merck & Co., Inc.,* 2006 U.S. Dist. LEXIS 37376 *12-13 (E.D. Ky. 2006) (*citing Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005). "While the plaintiffs' decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election unless the plaintiff…used an unacceptable device to defeat diversity." *Id.* at *13 (citations omitted).

The only way GSK can properly remove this case and invoke the jurisdiction of this Court is to seek severance of some of the parties Plaintiffs chose to name under Rules 19 and 21. Generally the Rule 19 analysis looks to whether a party should be added, not severed. *See, e.g., Soberay Mach. & Equip. Co. v. MRF Ltd.,* 181 F.3d 759, 763-64 (6th Cir. 1999). Here, however, because GSK wants to sever a party that Plaintiffs properly joined solely to obtain federal jurisdiction, the burden is especially high on them. *See Pinson* at *4. GSK must prove, among other things, that the claims against the Medical Defendants are "highly distinct" from the claims brought against the other defendants. *See Mayfield v. London Women's Care, PLLC*, 2015 U.S. Dist. LEXIS 68906 *12 (E.D. Ky. May 28, 2015). Legally and factually, GSK cannot meet this burden, nor can it show that Plaintiffs have "fraudulently misjoined" the Medical Defendants. Therefore, this Court must deny GSK's motion to sever and remand this entire case to Pike County.

## DISCUSSION

### A.    GSK Has Not Met Its Burden To Show That Medical Defendants Are Unnecessary, Dispensable Parties

As the party seeking to create federal jurisdiction through Rules 19 and 21, GSK bears a heavy burden: it must first show that the Medical Defendants are not necessary parties under Rule 19 and then show that the Medical Defendants are not indispensable parties, despite "all doubts" in that analysis being resolved in Plaintiffs' favor. *See Mayfield* at *8-10. These high hurdles

4

show why severance is the "rare exception" to joinder. *Pinson* at *4 (citations omitted). The Hon. Judge David Bunning detailed the elements GSK must prove in *Mayfield*:

> First, a court must decide whether the party to be severed is necessary to the lawsuit. "A party is 'needed for just adjudication' under Rule 19 if: (1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations."

> If the party is deemed necessary, a court will then determine if he is dispensable by considering "whether (1) a judgment rendered in the party's absence would prejudice the available party; (2) such prejudice could be lessened or avoided; (3) a judgment rendered in the party's absence would be adequate; and (4) the plaintiff has an adequate remedy if the action is dismissed for nonjoinder."

*Id.* at *8-10 (*citations omitted*). The Court also noted: "when a court contemplates severance under Rule 21, it should 'carefully consider whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation.'" *Id.* at *10 (citations omitted). Other than citing the outcome of *Mayfield,* GSK has not provided any evidence that satisfies these elements, nor has it addressed the severe prejudice to Plaintiffs severance would cause. GSK asserts without any analysis that "medical negligence claims against the Healthcare Defendants are factually and legally separate and distinct from the products liability claims against the Pharmaceutical Defendants." (DE#3-1 at pg. 3). First, as discussed in greater detail below, this is simply not true. Second, *Mayfield* is factually distinguishable. And finally, this Court has ruled the opposite of *Mayfield* in cases with nearly identical facts as both here and the facts in *Mayfield.*

In *Mayfield*, the plaintiff alleged injury from an implanted medical device and alleged medical negligence claims against the implanting surgeon. *Id.* at *2. The plaintiff alleged general products liability claims against the device manufacturer, and medical negligence claims against the doctor. *Id.* at *4. The medical device defendants sought severance of the claims against them, which would result in the medical negligence claims being remanded to Kentucky state court and

the claims against the manufacturer being transferred to the Southern District of West Virginia, where an MDL had been established for the exact same product.  *Id.* at *5-6.  Judge Bunning determined that the claims against the medical defendants were "highly distinct" from those brought against the device manufacturers, and reasoned that because the MDL would likely result in a settlement without much if any litigation by the plaintiff, "dual litigation" would not actually occur.  *Id.* at *12, *16-17.  Therefore, the court severed the products claims for transfer to the MDL and remanded the medical negligence claims.

The facts here support a different result.  First, Plaintiffs' claims against all of the Defendants involve off-label promotion of Zofran, both as it relates to Destiny's birth defects and her own usage of Zofran.  *See, e.g.,* Complaint at ¶¶ 7, 28, 66, 97, 108-123, 218-219, 239, 289. This shows that, unlike the "highly distinct" claims in *Mayfield*, there is an indivisible factual nexus here between GSK's actions and the allegations against the Medical Defendants.  The allegations that GSK caused Destiny's death are not factually and legally separate and distinct from the allegations that the Medical Defendants also caused Destiny's death.  Only after discovery and expert testimony can the parties determine the causal relationship between Destiny's injuries and death and 1) her mother's Zofran usage because of GSK's off-label promotion and/or failure to warn her mother's physician, 2) her own Zofran usage because of GSK's off-label promotion and/or failure to warn her physician and 3) the Medical Defendants' negligence in both prescribing Zofran off-label to an infant in light of medical literature to the contrary and failing to use reasonable care in evaluating and monitoring her symptoms before and after the Zofran usage. *Mayfield* does not support severance because the claims against the Medical Defendants are not legally distinct from those against GSK and the other defendants.

Second, while there is a petition for an MDL pending for Zofran cases involving usage of brand name Zofran, because neither Destiny nor her mother took brand name Zofran, and because Destiny also took generic Zofran herself which did not cause her birth defects, it is highly uncertain that this case would be included in the MDL involving name brand Zofran taken by mothers during pregnancies that caused their babies' birth defects.  Even if the claims against GSK were transferred to an MDL sometime in the future, the issues that are unique to her case would not get the same sort of benefit of an MDL as the plaintiff whose product was the subject of the MDL in *Mayfield*.  And while Judge Bunning believed severing parties in *Mayfield* would lead to *more* efficient litigation because of that MDL, here, the unique nature of her claims and the uncertainty of whether an MDL would include claims like Destiny's would lead to duplicative discovery, motion practice and other inefficient uses of judicial and the parties' resources.  In sum, the outcome in *Mayfield* is factually and legally distinguishable from the outcome here that its reasoning should not apply, and *Mayfield* does not help GSK carry its heavy burden for removal.

While *Mayfield* is distinguishable, the facts here are virtually identical to those in *Smith v. Smithkline Beecham Corp.*, where this Court remanded claims against GSK involving birth defects caused by drugs taken during pregnancy back to state court.  2010 U.S. Dist. LEXIS 89759 (E.D. Ky. 2010).  There, another one of GSK's drugs, Paxil, allegedly caused birth defects to a child, and the child's mother brought claims against both her doctor and GSK.  *Id.* 2-3.  GSK removed, arguing like here that the plaintiffs had fraudulently joined the physician defendants.  *Id.* at *2. GSK had to prove that "the plaintiff fails to state even a 'colorable' claim against" the non-diverse defendant.  *Id.* at *4 (*citations omitted*).  Like here, the plaintiffs in *Smith* alleged medical negligence for the prescription of Paxil even though GSK argued those claims were inconsistent with the claims against GSK.  *Id.* at *5-6.  This Court rejected those arguments, noting that both

the Kentucky and Federal Rules of Civil Procedure allow alternate or inconsistent pleadings. *Id.* at *6 (citations omitted). Because, like here, plaintiffs in *Smith* alleged that the risks of birth defects were publicly available, there were colorable claims against the prescribing physician and there was no fraudulent joinder. *Id.* at *7-8. This Court remanded the case to state court. *Id.* at *17-18.

Similarly, the Hon. Judge Joseph M. Hood rejected drug company defendants' arguments under Rules 19 and 21, and instead remanded a prescription drug case to state court because of the presence of medical defendants in *Melton v. Merck & Co., Inc.*, 2006 U.S. Dist. LEXIS 37376 (E.D. Ky. 2006). There, like here, a plaintiff who had a heart attack while on the prescription drugs Vioxx, Bextra and Celebrex brought claims for products liability against the drug manufacturers and claims for medical negligence against her doctors for prescribing her the drugs. *Id.* at *3-4. The manufacturers, like GSK here, argued that the medical defendants were "misjoined" and therefore the court should sever them under Rules 19 and 21. *Id.* at 14. Judge Hood rejected that argument out of hand: "With no support for alleging misjoinder under Rule 20, Merck's argument that Rules 19 and 21 can be employed after removal to create complete diversity and avoid remand is without merit." *Id.* Plaintiffs' claims are more like those in *Smith* and *Melton* than *Mayfield*. *Smith*, like here, involves a GSK product that caused birth defects when taken during pregnancy and caused a child's death when prescribed off label. *Melton* also involves claims against drug companies for prescription drugs causing harm, and the physician who prescribed the drugs.

*Mayfield*, on the other hand, is a medical device implanted by a surgeon. And *Mayfield* is actually in conflict with *Williams v. Altman*, in which this Court remanded claims involving a similar medical device to the one in *Mayfield* to state court because the plaintiff also brought claims

against the implanting surgeon.  2013 U.S. Dist. LEXIS 281 *1-3 (E.D. Ky. 2013).  In *Williams*,

the defendants asserted both fraudulent joinder and, like GSK here, "fraudulent misjoinder."  *Id.*

at *5-6, *17-18.  This Court rejected both arguments, and noted that the Sixth Circuit has "yet to

adopt" fraudulent misjoinder as a rule, and "until that day comes this Court will not recognize it."

*Id.* at *18-19.  In the two years since this Court decided *Williams*, the Sixth Circuit has still not

adopted it.  And, like in *Williams*, fraudulent misjoinder would not apply here because that

"doctrine only applies to 'egregious' misjoinder."  *Id.* at *19, *citing Tapscott v. MS Dealer Serv.

Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996).  The Court summarized the claims in *Williams*:

"Williams alleges that she was injured by a mesh implant that the Kentucky defendants placed in

her and the removing defendants manufactured and marketed.  None of the defendants can say that

they 'hav[e] no real connection with the controversy."  *Id.* (*citations omitted)*.  That summary

applies here: all of the Defendants have a real connection to this controversy.  Thus, to the extent

GSK relies solely on *Mayfield* and – as this Court described it in *Williams* – the "recently invented"

doctrine of fraudulent misjoinder, GSK cannot meet its burden to support severance and removal

here.

Finally, before deciding *Mayfield*, Judge Bunning persuasively reasoned that using Rule

21 "would be improper" because the court would be deciding "a procedural issue without first

assuring itself that it has jurisdiction over the case."  *Estate of Owens v. E.I. Dupont De Nemours

& Co.*, 2013 U.S. Dist. LEXIS 189836 *22-23 (E.D. Ky. 2013).  That is, severing non-diverse

defendants would be taking an "action in a case over which it does not have jurisdiction with the

sole purpose of *creating* jurisdiction."  *Id.* at *23 (emphasis in original).  That is what GSK is

asking this Court to do: use Rule 21 to assert jurisdiction over a case it otherwise would not have

jurisdiction.  Perhaps critical to Judge Bunning's decision in *Mayfield* was the existence of an

MDL to which the federal claims could be transferred, preserving judicial economy and fundamental fairness. However, because an MDL likely would not benefit Plaintiffs or judicial resources here like in *Mayfield*, the reasoning and outcome in *Estate of Owens* – as well as *Williams*, *Smith*, and *Melton* – should control here.

In sum, GSK cannot meet its burden to show that the Medical Defendants are unnecessary and dispensable parties. To the contrary, the factual and legal allegations against the Medical Defendants are inexorably tied to those against the other defendants. Whether Zofran caused Destiny's birth defect injuries and then caused her death because of her birth defects, her own ingestion, her doctor's decision to prescribe it, or some combination of all of those things makes all Defendants necessary and indispensable parties. GSK cannot point to any authority for severing the Medical Defendants solely for the purpose of creating federal jurisdiction here, and this Court must deny GSK's motion and remand this case to Pike County Circuit Court.

## B. Severance Would Prejudice Plaintiffs; GSK Did Not Assert Any Prejudice

Even if GSK were to meet its burden to show that all of the elements of both Rule 19 *and* Rule 21 were met, it could not overcome its final burden: showing that severance and removal is the most fair and just outcome here. "Fairness, including the possibility of prejudice in the absence of severance, is a critical consideration." *See, e.g., Quesenberry v. Chrysler Group LLC,* 2012 U.S. Dist. LEXIS 107380 *18 (E.D. Ky. 2010) (citations omitted). "In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff chooses to sue, subject only to the rules of joinder of necessary parties." *Melton at* *12-13 (*citing Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005). "While the plaintiffs' decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with

this inevitable consequence of a plaintiff's election unless the plaintiff…used an unacceptable device to defeat diversity." *Id.* at *13 (citations omitted).

There is no evidence, nor can GSK even credibly argue, that Plaintiffs have used "an unacceptable device to defeat diversity."  Like in *Williams*, *Melton* and *Smith*, there is a factual and legal nexus between the Medical Defendants and the drug companies on both the issues of liability and causation.  Going to trial in state court against only the Medical Defendants and in federal court against the other defendants would result in "empty chair" trials in both locations: GSK and the other defendants can blame Destiny's death on the Medical Defendants' treatment of Destiny, and the Medical Defendants can blame her death on GSK and the other defendants. Plaintiffs would be subject to duplicative discovery, depositions, expert requirements and other difficulties inherent in dual litigation.  Plaintiffs, not GSK, gets to decide which parties to name in their Complaint and where the case should be litigated, and would be greatly prejudiced if forced to pursue dual litigation.

And Plaintiffs would be prejudiced if their case were split because they would not necessarily get the same benefit of an MDL that Judge Bunning found decisive in *Mayfield*.  In addition to the factual differences between Destiny's cases and any potential Zofran MDL discussed above, no Kentucky state court has ruled on whether brand drug companies like GSK can be liable for injuries to users of generic drugs.  The appropriate forum to determine that question is a Kentucky state court, not an MDL in another jurisdiction.  In the only state where the issue of brand liability was decided by that state's Supreme Court after the federal courts in that state had predicted the outcome, the federal courts' predictions were completely wrong.  *See e.g., Simpson v. Wyeth*, 2010 U.S. Dist. LEXIS 139246 (N.D. Ala. Dec. 9, 2010) (citing *Foster* to deny claims against the same Brands here in a Reglan case); *Mosley v. Wyeth*, 719 F.Supp.2d 1340 (S.D.

11

Ala. June 28, 2010) ("Given the limited circumstances under which Alabama has recognized a cause of action for negligent misrepresentation, this court concludes that the Mosleys do not have a negligent misrepresentation claim against the [Brand] Reglan manufacturers."); *but see Wyeth, Inc. v. Weeks*, 159 So. 3d 649 (Ala. 2014) (finding brand drug companies can be liable to users of generic products under Alabama law. Thus, Plaintiffs would be prejudiced by taking away their right to have a Kentucky state court hear an issue of first impression under Kentucky law.

Plaintiffs would thus not be able to properly litigate their claims factually or legally in an MDL and would be prejudiced much more so than the plaintiff in *Mayfield* by severance of their claims. GSK will not be prejudiced and cannot point to any prejudice of litigating this case in the same action as the Medical Defendants. They simply do not want to, which is not sufficient grounds to invoke federal jurisdiction through the legal gymnastics of Rule 19 and Rule 21. Simply put, one case in a Kentucky state court involving all of the parties together in one trial is the most fair, judicially efficient and appropriate method to resolve this case. GSK cannot meet its burden under even the *Mayfield* decision to show no prejudice to Plaintiffs here.

## CONCLUSION

GSK cannot meet its burden to show that this Court should invoke its discretionary power under Rule 21 to sever the Medical Defendants to create federal jurisdiction over this case. Instead, this Court must deny GSK's motion and remand this entire case to Pike County Circuit Court.

Respectfully submitted,

**JONES WARD PLC**

*/s/ Jasper D. Ward IV*
Jasper D. Ward IV
Alex C. Davis
312 S. Fourth Street, 6th Floor
Louisville, Kentucky 40202
T: (502) 882-6000
F: (502) 587-2007
jasper@jonesward.com
alex@jonesward.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September 2015, a true and correct copy of the foregoing document was filed with the Court through the CM/ECF system, and will be sent electronically to all registered participants who have entered appearances in this case to receive Notice of Electronic Filing.

s/*Jasper D. Ward IV*
*Counsel for Plaintiffs*