UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | |
|---|---|
| HEATHER BOSTIC, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil No. 15-84-ART |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION** |
| GLAXOSMITHKLINE, LLC, et al., ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Heather Bostic took ondansetron, generic Zofran, to treat morning sickness during the first trimester of her pregnancy. R. 1-1 at 6. Zofran is a drug meant to prevent nausea and vomiting caused by chemotherapy and radiation cancer treatments. *See* Ondanestron Information, FDA, *available at* http://www.fda.gov/Drugs/DrugSafety/PostmarketDrugSafetyInformationforPatientsandProviders/ucm271924.htm (last visited Dec. 7, 2015). Sadly, Heather Bostic's daughter, D.B., was born with multiple congenital defects, including a missing kidney and a hole in her heart. *Id.* When D.B. was about seven months old, she got sick and started vomiting. *Id.* at 7. A doctor prescribed D.B. Zofran for her nausea, and Heather Bostic gave one dose of it to D.B. *Id.* Tragically, the next day, D.B. stopped breathing and died from cardiopulmonary arrest. *Id.* at 8.

In August 2015, plaintiffs Heather and Timothy Bostic filed a malpractice suit in Pike County Court against the pediatrician who prescribed Zofran to D.B., Dr. Aaronda Wells, and Dr. Wells's employer, the East Kentucky Medical Group, P.S.C. (the "Healthcare Defendants"). R. 1-1 at 7, 9. In addition, the Bostics sued three pharmaceutical companies

for products liability (the "Pharmaceutical Defendants"): Zofran's manufacturer, GlaxoSmithKline LLC, and ondansetron's manufacturers and distributors, Teva Pharmaceuticals USA, Inc. ("Teva") and Taro Pharmaceuticals U.S.A., Inc. ("Taro"). The Bostics also sued First DataBank, Inc. ("DataBank"), a company that contracts with pharmacies to provide drug information to consumers, for failure to warn. *Id.* at 11.

GlaxoSmithKline removed the case to federal court, alleging diversity jurisdiction. R. 1. Although the Bostics and the Healthcare Defendants are all Kentucky citizens, GlaxoSmithKline argues that the Court should disregard the Healthcare Defendants' citizenship because they are fraudulently misjoined to the suit. R. 1 at 14–15. In the alternative, GlaxoSmithKline and the Pharmaceutical Defendants ask the Court to use Federal Rule of Civil Procedure 21 to sever the claims against the Healthcare Defendants and retain jurisdiction. R. 1; R. 3.

The Bostics filed a motion to remand, R. 22, arguing that the Healthcare Defendants are properly joined and the Court should not sever them from the suit. The Bostics are correct: the Healthcare defendants are properly joined. And the Court will not exercise its discretion to sever them under Rule 21. Therefore, this case is remanded to state court for lack of jurisdiction.

**I.      The Healthcare Defendants Are Properly Joined.**

The Pharmaceutical Defendants argue that the Healthcare Defendants are fraudulently misjoined. R. 3-1 at 4. Courts sometimes employ the controversial and "relatively new" doctrine of fraudulent misjoinder when a plaintiff joins a "valid, but unrelated, claim against a non-diverse defendant" to defeat diversity. *Murriel-Don Coal Co. v. Aspen Ins. UK Ltd.*, 790 F. Supp. 2d 590, 599 (E.D. Ky. 2011). For example, if a Kentucky plaintiff sues an Ohio

2

driver for causing a car crash and then joins a Kentucky plastic surgeon for performing a botched facelift that occurred six months earlier, the surgeon is fraudulently misjoined. *Id.* Under the fraudulent misjoinder doctrine, the federal court could therefore sever the claim against the surgeon to obtain diversity jurisdiction. *Id.* Though the claim against the surgeon is "colorable, it is entirely unrelated to the claim against the Ohio driver." *Id.* Fraudulent misjoinder, however, is a questionable doctrine invented by the courts and remains "unsettled" in this Circuit. *Id.* at 599–600 (explaining the many problems with the fraudulent misjoinder doctrine).

Moreover, even applying this questionable doctrine, the Healthcare Defendants are not fraudulently misjoined.[1] Under both federal and Kentucky rules of civil procedure, there is no misjoinder "if the plaintiff's claims arise from the same" transaction or occurrence and a "question of law or fact common to all defendants will arise." *Id.* at 600 (citing Fed. R. Civ. P. 20(a)(2) and Ky. R. Civ. P. 20.01). The Bostics' claims against the Healthcare Defendants, DataBank, and the Pharmaceutical Defendants meet those requirements. First, the same occurrence—D.B.'s death—gives rise to all of the Bostics' claims. The Bostics allege that each defendant contributed to D.B.'s death. *See, e.g.*, R. 3-1 at 31, 36, 49. Second, a common question of fact arises as to all the defendants: did Zofran or its generic version cause D.B.'s death? True, some questions of fact or law are specific to the Healthcare Defendants, *e.g.*, was Dr. Wells negligent in prescribing Zofran to D.B.? But one common question is enough to show proper joinder, and here there is one. Fed. R. Civ.

---

[1] No consensus exists as to whether courts should analyze joinder under federal or state rules. *Id.* Both sets of rules lead to the same result here, so there is no need to decide.

P. 20(a)(2); Ky. R. Civ. P. 20.01.  Therefore, even if it could, the Court would not sever the Healthcare Defendants using fraudulent misjoinder.

## II. The Court Will Not Sever the Healthcare Defendants Under Rule 21.

GlaxoSmithKline argues that, even if the defendants are not fraudulently misjoined, the Court should sever the Healthcare Defendants and thereby preserve federal jurisdiction. Federal Rule of Civil Procedure 21 permits a court, in its discretion, to "sever any claim against a party," Fed. R. Civ. P. 21, as long as that party is not required under Rule 19. *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 546 (6th Cir. 1994) (laying out requirements for necessary parties under Rule 19(a)); *Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 764 (6th Cir. 1999) (outlining requirements for dispensable parties under Rule 19(b)).

Even when a party could be severed under Rule 21, however, the "authority to dismiss a dispensable nondiverse party . . . should be exercised sparingly." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989).  Courts should "carefully consider whether [severance] of a nondiverse party will prejudice any of the parties in the litigation." *Id.* at 838; *Hardaway v. Checkers Drive-In Restaurants, Inc.*, 483 F. App'x 854, 855 (4th Cir. 2012); *see also* 1 Fed. Proc., L. Ed. § 1:241 (stating that courts should consider prejudice to any party when deciding to sever a dispensable party).

Severance would prejudice the plaintiffs here.  If the Court severed the Healthcare Defendants, the Bostics would have to litigate on two fronts: in state court against the Healthcare Defendants and in federal court against the Pharmaceutical Defendants and DataBank.  And the overlap between the two cases means the Bostics would have to

4

duplicate their efforts. For example, the Bostics would have to prove in both cases that Zofran and its generic equivalent caused D.B.'s birth defects and death.

Moreover, a plaintiff is generally "the master of [her] complaint" and can choose who she wants to sue. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 91 (2005). Here, the Bostics chose to sue all the defendants together in state court. All of the defendants are properly joined. There is a common nucleus of fact, involving one harm allegedly caused by multiple defendants. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) ("Joinder of claims, parties, and remedies" is "strongly encouraged" under the Federal Rules of Civil Procedure.). There is no good reason to contravene the plaintiffs' decision here.[2]

The Pharmaceutical Defendants respond that the Court should sever the Healthcare Defendants so the case can join a federal multidistrict litigation ("MDL") about Zofran and ondansetron in the District of Massachusetts. *In re Zofran (Ondansetron) Products Liability Litigation*, No. 1:15-MD-02657-FDS (D. Mass.). They cite a recent Eastern District of Kentucky case in support of their argument, *Mayfield v. London Women's Care, PLLC*, No. CIV.A. 15-19-DLB, 2015 WL 3440492 (E.D. Ky. May 28, 2015). The *Mayfield* court severed non-diverse defendants—a doctor and clinic—so that the case could join a federal products-liability MDL about allegedly defective pelvic mesh. *Id.* at *2. Transfer to the MDL, the court noted, had "undeniable upside" that made severance an attractive option for the plaintiffs. *Id.* at *5.

Here, however, the benefit to the plaintiffs from the *In re Zofran* MDL is less certain. The MDL may not help the plaintiffs resolve their case "more efficiently." *See Mayfield*,

---

[2] Therefore, the Court need not rule whether the Healthcare Defendants are necessary or indispensable parties under Rule 19.

5

2015 WL 3440492, at *5. First, the plaintiffs' claims against the Pharmaceutical Defendants are distinct from those in the MDL. The MDL focuses on whether Zofran/ondansetron "causes birth defects in children when their mothers ingest the drug while pregnant." D.E. 3 at 1, *In re Zofran*, No. 1:15-MD-02657. The Bostics allege that Heather Bostic's ingestion of ondansetron caused D.B.'s birth defects and subsequent death. However, the Bostics also allege that *D.B.'s* ingestion of Zofran caused D.B.'s subsequent death. Resolving that issue requires facts about the effect of Zofran on infants, which fall outside the scope of the MDL.

Second, the Bostics' claims against DataBank also fall outside the scope of the MDL. DataBank contracts with pharmacies to provide information about Zofran or ondansetron to consumers. R. 3-1 at 49–50. To resolve the Bostics' claims against DataBank, a court must identify what duty DataBank owed the plaintiffs, if any, and whether DataBank knew or had reason to know of the alleged dangers of Zofran's off-label use. *Id.* at 51–52. Those issues also fall outside the MDL's scope. MDLs can have many benefits, including the elimination of "duplicative discovery" and conservation of the parties' and judicial resources. D.E. 3 at 1, *In re Zofran*, No. 1:15-MD-02657 (entered Oct. 13, 2015). But decisions to sever must be governed by the "practicalities of the particular case." *See Soberay Mach. & Equip. Co. v. MRF Ltd., Inc.*, 181 F.3d 759, 765 (6th Cir. 1999) (discussing what makes a party indispensable under Rule 19(b)). In this case, the benefits of the *In re Zofran* MDL do not extend far enough to outweigh the prejudice to the Bostics from being forced to litigate on two fronts.

## CONCLUSION

The Healthcare Defendants are properly joined in this suit, and severing them would prejudice the Bostics. Because the Bostics and the Healthcare Defendants share Kentucky citizenship, this Court lacks subject matter jurisdiction. Therefore, this case is remanded to state court.

Accordingly, it is **ORDERED** that:

(1) The Pharmaceutical Defendants' motion to sever, R. 3, is **DENIED**.

(2) The plaintiffs' motion to remand, R. 22, is **GRANTED**. This case is **REMANDED** to state court.

(3) All pending motions are **DENIED AS MOOT**, and this case shall be **STRICKEN** from the Court's active docket.

This the 9th day of December, 2015.

Signed By:
Amul R. Thapar
United States District Judge